UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:19-CR-151-TAV-DCP-10 |
| JYSHON FORBES, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on May 14, 2021 [Doc. 384]. The R&R addresses defendant's Motion to Suppress Evidence and Statements [Doc. 338]. The government responded to the motion [Doc. 347]. Judge Poplin held a hearing on the motion on April 2, 2021 [Doc. 351]. Judge Poplin then issued the R&R [Doc. 384] recommending that the Court deny the motion to suppress.

Defendant has filed an objection to the R&R [Doc. 394]. The government has filed its response to the objection [Doc. 397], and no replies have been filed. The matter is now ripe for adjudication. For the reasons set forth more fully below, the defendant's objection to the R&R will be **OVERRULED**.

**I. Background**

The Court presumes familiarity with the R&R's description of the background. Defendant did not file any specific objections as to the factual background set forth in the

R&R [Doc. 384, pp. 4-25]. The Court, therefore, incorporates by reference the factual background established in the R&R.

## II. Standard of Review

A court must conduct a *de novo* review of those portions of a magistrate judge's report and recommendation to which a party objects unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "Objections disputing the correctness of the magistrate's recommendation, but failing to specify the findings believed to be in error are too general and therefore insufficient." *Stamtec, Inc. v. Anson*, 296 F. App'x 516, 519 (6th Cir. 2008) (citing *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)). An objection which accomplishes "nothing more than stat[ing] a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used" in the context here. *Daniels v. Colvin*, 3:14-cv-546, 2016 U.S. Dist. LEXIS 24315, 2016 WL 792416, at *1 (E.D. Tenn. Feb. 29, 2016) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)). The Court may treat objections which amount to disagreements with the magistrate judge or which merely restate previous arguments as waived. *Daniels*, 2016 U.S. Dist. LEXIS 24315, 2016 WL 792416, at *1. The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1).

**III. Analysis**

Defendant raises five objections to the R&R [Doc. 394]. After reviewing the objections, the Court finds that these are general, conclusory objections which amount basically to a disagreement with the magistrate judge's ruling. Defendant fails to provide any significant legal argument to support his objections, or otherwise set forth how the R&R is erroneous. However, while such conclusory objections may be treated as a waiver of opposition, the Court will briefly address each of defendant's objections.

**A.  First Objection**

Defendant first objects to the R&R's finding that the traffic stop at issue was justified based on the officer having probable cause that defendant was following the vehicle in front of him too closely, in violation of Tennessee traffic laws.[1] Defendant argues:

> that this was a pretextual stop and that the video of the incident does not support the charge of following too closely. The standard of car lengths traveling versus miles per hour to determine if a subject is following too closely is entirely a subjective standard based upon guesswork of law enforcement versus an objective standard and measured by any type of objective technology.

[Doc. 394, ¶ 1, citations to the R&R omitted].

---

[1] Defendant's first objection raises issues as to the legality of the traffic stop as well as whether the officer had reasonable suspicion of criminal activity based on information relayed to Tennessee Highway Patrol by the government agents conducting the underlying investigation. The Court will address the second half of this objection in conjunction with defendant's third objection, which also addresses whether there was reasonable suspicion to support a search of the vehicle.

3

In addressing this issue, Judge Poplin correctly noted that "[r]egardless of [an] officer's subjective motivations, a traffic stop is lawful if he has probable cause to believe a traffic violation occurred." *United States v. Warfield*, 727 F. App'x 182, 185-86 (6th Cir. 2018) (citation omitted). She also correctly set forth Tennessee's law regarding following another vehicle too closely, as well as the guidance the Sixth Circuit has offered on that law [Doc. 384, pp. 26-28]. Specifically, Judge Poplin noted that the Sixth Circuit has approved both the one car length per ten miles per hour standard of determining whether a driver is following too closely, as well as that of maintaining a following distance of at least two seconds (four seconds for interstate highway travel). *See United States v. Howard*, 815 F. App'x 69, 74 (6th Cir. 2020) (citations omitted). Defendant argues these standards are too subjective, but cites no case law in support of that argument.

Having conducted an independent review of the relevant case law, as well as the evidence (including the video footage from the trooper's dash cam) and testimony offered during the hearing, the Court finds that the R&R properly analyzes the issue and that Judge Poplin properly found that Trooper Fletcher had probable cause that defendant was following the vehicle in front of him too closely in violation of Tennessee law, and thus the traffic stop was authorized. Accordingly, defendant's first objection will be **OVERRRULED**.

### B. Second Objection

Defendant next objects to the R&R's findings regarding the scope and duration of the traffic stop at issue. Specifically, defendant contends that:

4

> [t]he Magistrate Judge erred in concluding that the scope and duration of the traffic stop conducted by Tennessee Highway Patrol (THP) Trooper Fletcher was permissible. The [d]efendant notes that Exhibit 1 to the hearing on the Motion to suppress (which is the video from the THP patrol car that followed the [d]efendant's automobile) indicates that the [d]efendant's vehicle was stopped at approximately 20:02:53, and thereafter THP Trooper Fletcher confirms the [d]efendant's suspended license at approximately 20:11:30. Trooper Fletcher proceeds to question the [d]efendant, and he never reads the [d]efendant his *Miranda* rights – despite the fact that the [d]efendant was not free to leave the scene. The length of the stop exceeded the time necessary to write up a citation to this [d]efendant for following too closely, making the detention constitutionally impermissible. *See*, *e.g.*, *Florida v. Royer*, 460 U.S. 491, 500 (1983); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000).

[Doc. 394, ¶ 2, citations to the R&R omitted]. The two cases (*Florida v. Royer and United States v. Hill*) cited by defendant discuss the general principal that traffic stops must be reasonable in scope and duration, and do not contradict Judge Poplin's legal rulings on this issue.

In this instance, the traffic stop lasted approximately eight minutes and thirty-seven seconds (from 20:02:53, when the vehicle is pulled over, to 20:11:30, when the officer learned that defendant's driver's license was suspended and defendant was handcuffed and subsequently arrested). In addressing this issue, the R&R correctly notes that there is no strict time limit to determine the reasonableness of a traffic stop, but rather "the proper inquiry is whether the totality of the circumstances surrounding the stop indicates that the duration of *the stop as a whole* – including any prolongation due to suspicionless unrelated questioning – was reasonable." *United States v. Everett*, 601 F.3d 484, 494 (6th Cir. 2010) (citation omitted). The R&R recognizes that during a traffic stop, an officer is allowed to make certain inquiries, such as "checking the driver's license, determining whether there

5

are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriquez v. United States*, 575 U.S. 348, 355 (2015) (citation omitted). Judge Poplin noted that the Sixth Circuit has held that a fifteen minute long traffic stop was not per se unreasonable because of its duration. *See United States v. Marsh*, 443 F. App'x 941, 943-44 (6th Cir. 2011). The *Marsh* court further held that "[i]n a traffic stop, an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation." *Id.* at 943 (citation omitted).

In this case, Trooper Fletcher checked on the status of defendant's driver's license, a reasonable and permissible inquiry in light of the traffic stop, and, upon finding that defendant's license was suspended, the Trooper promptly arrested defendant. While the officer was waiting on the results of the license check, he asked defendant several questions, but that questioning did not unreasonably extend the traffic stop or extend beyond the type of questioning allowed during a traffic stop. After conducting an independent review, the Court agrees with Judge Poplin's finding that "the facts and circumstances in the present case support the conclusion that the duration of the traffic stop was reasonable" [Doc. 384, pp. 34-35]. Accordingly, defendant's second objection will be **OVERRULED**.

### C. Third Objection

Defendant next argues that law enforcement lacked the reasonable suspicion needed to justify a search of the vehicle. Specifically, defendant states that the:

> Magistrate Judge erred in concluding that there was reasonable suspicion of criminal activity during the traffic stop that justified an extended traffic stop

6

which ultimately led to the discovery of a bag of currency in the [d]efendant's automobile. Although Trooper Fletcher described that the [d]efendant was sweating profusely and was having a difficult time giving direct answers, Trooper Fletcher acknowledged that pretty much everyone is nervous when getting pulled over by a police officer, and that it would be fair to say that different cultures or ethnic groups would respond differently to law enforcement and that it was hot on the day in question.

[Doc. 394, ¶ 3, citations to the R&R omitted]. Defendant also argues that:

> The [d]efendant respectfully suggests that there was not support in the record for "a finding that Trooper Fletcher had a reasonable suspicion that this [d]efendant was engaged in criminal activity," where the federal agents who observed the [d]efendant at a gas station with the original target of the investigation did not provide testimony to support a conclusion that this [d]efendant was engaged in criminal activity, as opposed to the original target of the investigation.

[Doc. 394, ¶ 1, citations to the R&R omitted].

In this instance, during the traffic stop, defendant was ultimately arrested for driving on a suspended license and his passenger and co-defendant, Kedaris Gilmore, was arrested because of an outstanding warrant [Doc. 384, pp. 22-23]. Trooper Fletcher asked for permission to search the vehicle (which is the subject of defendant's fourth objection), though the parties dispute whether permission was given [*Id*. at p. 24]. During the search, police found a dog food bag which had previously been opened and was resealed with Super Glue [*Id*. at pp. 15-16]. The dog food bag contained a clear plastic bag full of U.S. currency [*Id*., Exhibits 3-5 to hearing]. It was later determined that the bag contained $13,130.00 in U.S. currency [Doc. 384, p. 16].

Prior to the traffic stop, the FBI, who were conducting a wiretap investigation, intercepted conversations between codefendants Gilmore (the passenger in defendant's

7

vehicle during the traffic stop) and Ushery Stewart [*Id*. at p. 4]. The intercepted communications indicated that Stewart and Gilmore possessed approximately $14,000 in drug proceeds which they wished to use to purchase drugs from their source of supply in Nashville [*Id.*]. The investigation also revealed that Gilmore would be traveling to Nashville in a borrowed silver Honda Accord (the "Accord") to make the purchase [*Id.* at p. 5]. Stewart and Gilmore arranged to meet at a truck stop in the Knoxville area [*Id*.]. Law enforcement officers physically observed this meeting [*Id.*]. The Accord arrived at the truck stop, parked, and Stewart, who was already at the truck stop, exited his vehicle, got in the Accord, and exited the Accord a few moments later [*Id.*]. Gilmore was also observed in the Accord, and the FBI knew that Gilmore had an outstanding warrant for his arrest [*Id*. at pp. 5-6]. After Stewart exited the Honda Accord, the vehicle left the truck stop [*Id*.].

At this point, the FBI contacted the Tennessee Highway Patrol ("THP") and asked THP to stop the Accord based on the FBI's belief that the vehicle was transporting drug proceeds, as well as knowledge that Gilmore, a passenger in the Accord, had an outstanding warrant [*Id*. at p. 5]. Trooper Fletcher, the THP officer who effectuated the traffic stop, confirmed that his sergeant directed him to assist the FBI by performing a traffic stop of the Accord, informed him that the Accord was occupied by two known Vice Lords members, one of whom (the passenger) had an outstanding warrant, and that the suspects were transporting illegal drug proceeds [*Id*. at p. 7]. Fletcher was also warned that the two individuals were considered armed and dangerous [*Id.*]. Fletcher was told what vehicle the

8

suspects would be driving, the direction they were traveling, and that the vehicle would be under law enforcement surveillance [*Id*. at p. 16].

The record also reflects that during the course of the traffic stop, defendant displayed signs that he was growing increasingly nervous. Defendant tried to exit the Accord at the beginning of the encounter with Trooper Fletcher without being asked to do so [*Id*. at pp. 10-11]. The Trooper testified that defendant was sweating profusely and appeared to have a dry mouth [*Id*. at pp. 11-12]. Trooper Fletcher further stated that defendant's responses to questioning also raised his suspicion that criminal activity was afoot [*Id*. at pp. 12-13]. In addition, Trooper Fletcher testified that the vehicle's passenger, codefendant Gilmore, was acting in a way which also drew the officer's attention [*Id*. at pp. 10-11].

Based on these facts, Judge Poplin was correct in ruling that, through collective knowledge gained from the FBI, Trooper Fletcher "had at least reasonable suspicion before stopping the vehicle that one of its occupants had committed a felony and, further, might be in possession of contraband." *United States v. Dickens*, 748 F. App'x 31, 39 (6th Cir. 2018). *See also United States v. Lyons*, 687 F.3d 754, 765-67 (6th Cir. 2012) (explaining the collective knowledge doctrine). The Court further finds that Judge Poplin correctly ruled that, based on the totality of the circumstances, including, but not limited to, collective knowledge that the vehicle was believed to be transporting illegal drug proceeds, defendant's increasing nervousness and behavior, physical signs of nervousness, evasive answers, and defendant's frequent use of convincing statements (such as I promise you and I'm not lying), taken all together, established reasonable suspicion that criminal activity

9

was occurring. *United States v. Richardson*, 358, F.3d 625, 631 (6th Cir. 2004) ("[E]ven a string of innocent behavior added together may amount to a reasonable suspicion of criminal activity.") (citation omitted). And while Trooper Fletcher conceded that it was hot on the day of the traffic stop, and that different people may respond differently to encounters with law enforcement [Doc. 384, p. 17], the Court finds that, based on the totality of the circumstances, Trooper Fletcher still had the requisite reasonable suspicion to justify expanding the traffic stop to include a search of the Accord.

Accordingly, having conducted an independent review, the Court finds Judge Poplin's rulings on these issues to be correct and defendant's objections will be **OVERRULED**.

### D. Fourth Objection

Defendant next objects to Judge Poplin's ruling that defendant consented to the search of the Accord. Specifically, defendant contends that:

> The Magistrate Judge erred in concluding that the [d]efendant gave consent to search the vehicle. The [d]efendant clearly stated that "No, Sir" to the Trooper Fletcher's request for consent to search the vehicle. The Government conceded that the [d]efendant was in custody at the time the [d]efendant was asked for consent to search the vehicle.

[Doc. 394, ¶ 4, citations to the R&R omitted].

The discussion regarding consent to search occurred as follows:

Trooper Fletcher: Alright, while I'm doin' this[2], is there anything illegal in that car I need to know about?

---

[2] Defendant and the Trooper were standing behind the Trooper's car while the Trooper adjusted defendant's handcuffs.

10

| | |
|---|---|
| Defendant: | No, sir. |
| Trooper Fletcher: | Alright. Do you give me consent to search the vehicle, contents, containers, anything suspicious therein? |
| Defendant: | No, sir. |
| Trooper Fletcher: | You don't give me permission? |
| Defendant: | Yes, yeah. |
| Trooper Fletcher: | Okay. |
| Defendant: | I got nothin' but a lot of money in there. [unintelligible] to my old lady. |
| Trooper Fletcher: | How much money is it? |
| Defendant: | It's 14,000. I'm back behind child support and I'm takin' [unintelligible] her. |
| Trooper Fletcher: | Okay. Where – here, let's just put your hands together, there we go. Where's that money at, sir? Where's the money at? |
| Defendant: | It's in a bag. |
| T. Fletcher: | In a bag? What, uh, [unintelligible]. What do you do for a living? |

[Doc. 347-1, pp. 9-10; Exhibits 1 and 2 at 20:21:56 – 20:22:40]. The conversation then continued, with the Trooper inquiring as to defendant's employment and finances [*Id.* at pp. 10-12].

In discussing the positions of the parties on the issue of consent, Judge Poplin noted that:

> Defendant Forbes argues that he was in custody at the time of the alleged consent and that it was clear from the Government's submitted transcript

11

> [Doc. 347-1] that he responded "No" to Trooper Fletcher's initial question seeking consent to search to the vehicle. During the hearing, the Government acknowledged that [d]efendant Forbes was in custody at the time that he was asked for consent, as well as that it was equivocal on a surface level as to whether or not [d]efendant Forbes gave knowing and voluntary consent due to the nature of the dialogue between Trooper Fletcher and [d]efendant Forbes. However, the Government maintains that the context of their previous communication provides that [d]efendant Forbes provided knowing, voluntary, and intelligent consent to search the vehicle.

[Doc. 384, p. 40]. The R&R then sets forth a thorough and correct analysis of the law governing voluntary consent to a warrantless search [*Id*. at pp. 40-42]. Judge Poplin also noted that "the fact of custody alone has never been enough in itself to demonstrate a coerced . . . consent to search," so the fact that defendant was detained at the time is not controlling. *United States v. Watson*, 423 U.S. 411, 424 (1976).

The Court agrees that from a strictly grammatical reading of the transcript, defendant, at first glance, does not appear to consent to the search. However, based upon the follow up questioning and the nature and tone of the discussion that follows, the Court agrees with Judge Poplin's finding that the totality of the circumstances support a finding that defendant provided voluntary and intelligent consent [Doc. 384, pp. 41-44]. Defendant acknowledged that he had money in the vehicle, and even told the officer where the money was located. If he had not agreed to a search, the Court finds it unlikely that defendant would have provided so much information about the contents of the vehicle without further contesting the search.

Regardless of whether defendant consented to the search, Judge Poplin also correctly noted that law enforcement had probable cause to search the vehicle based upon

12

the collective knowledge that the vehicle was being used to transport illegal drug proceeds [Doc. 384, pp. 45-47]. Judge Poplin further found that the inevitable discovery doctrine, coupled with THP's inventory search policy, would also serve to insulate the evidence discovered in the Accord from the alleged lack of consent to search [*Id.* at pp. 47-50].

Accordingly, after conducting an independent review, the Court finds that Judge Poplin correctly ruled that defendant did consent to the search, and that, even if defendant did not consent, there were other legal bases for a search of the Accord. Defendant's objections on this issue will be **OVERRULED**.

### E. Fifth Objection

Defendant next objects to Judge Poplin's ruling regarding the admissibility of defendant's un-*Mirandized* statements. Specifically, defendant argues that:

> Additionally, Trooper Fletcher questioned this [d]efendant without ever giving him the Miranda warning. The Government admits the [d]efendant did eventually come into Miranda custody and the Government stated it would not use these statements in its case-in-chief. So even the Government concedes that this is a problem with the [d]efendant never being read his Miranda warnings. The [d]efendant asserts that the Magistrate Judge erred in concluding that the [d]efendant was not in custody for the first part of his interrogation. The [d]efendant was not free to leave the scene and since the trooper was informed by federal agents to investigate the vehicle as part of a drug conspiracy the trooper was from the beginning of the stop on a "fishing expedition" to find a reason to stop and search the vehicle. The [d]efendant asserts that the Magistrate Judge erred in concluding that the statements regarding "did y'all count that money; that's fourteen, one thirty, to be exact;" and "I hope you gonna' open it on camera because I don't want nothing missing from that, sir" made by the Defendant, while in handcuffs in the back of the cruiser, were not voluntary statements not made in response to interrogation.

13

[Doc. 394, ¶ 5, citations to the R&R omitted]. In addressing this issue, Judge Poplin looked at two distinct periods of time, the time before defendant was handcuffed (which occurred once Trooper Fletcher determined that defendant was driving on a suspended license) and the time after the handcuffing. The Court agrees with this bifurcation of the issue, as once Trooper Fletcher determined that defendant was driving on a suspended license, what began as a traffic stop transformed from the equivalent of a *Terry* stop into a fully-fledged custodial arrest.

In reaching this conclusion, the case law is clear that the fact that Trooper Fletcher initially had defendant wait with him in the front seat of the Trooper's car poses no constitutional problem. Officers may require a driver to exit their vehicle during a traffic stop without violating the Fourth Amendment's proscription of unreasonable searches and seizures. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). This rule protects the safety of the officer while causing minimal intrusion on the driver, who has already been lawfully detained. *Id*. at 111. Directing a motorist to wait in a patrol car during the processing of a traffic stop does not constitute a custodial arrest for Fourth Amendment purposes unless it lasts beyond the time necessary to complete the purpose of the traffic stop or exceeds the purpose and objective of the stop. *United States v. Bradshaw*, 102 F.3d 204, 211-12 (6th Cir. 1996).

Moreover, the Supreme Court has stressed that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend

14

the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009), *see also United States v. Everett*, 601 F.3d 484, 489-497 (6th Cir. 2010). These questions may include "general questions of who, what, where, and why" of the driver's travel, particularly when there are potentially suspicious circumstances involved. *United States v. Ellis*, 497 F.3d 606, 614 (6th Cir. 2007). In such instances, "questions about travel plans will 'rarely suggest a lack of diligence' by the officer because such questions 'may help explain or put into context, why the motorist was committing the suspicious behavior the officer observed.'" *United States v. Jimenez*, 446 Fed. App'x 771, 775 (6th Cir. 2011).

In addition, in addressing defendant's earlier objections, the Court has already ruled that the traffic stop was valid, and that Trooper Fletcher did not impermissibly extend the scope and duration of the investigative detention. Based on all of the above, the Court rules that Judge Poplin properly found that the pre-handcuffing portion of the traffic stop was not a custodial detention which required the *Miranda* warning.

With respect to statements made post-handcuffing, the government conceded, and Judge Poplin agreed, that at that point the *Miranda* warning was required.[3] It is undisputed that the *Miranda* warning was not given, and therefore any statements defendant provided in response to law enforcement interrogation after he was handcuffed are inadmissible in the government's case-in-chief. However, the failure to provide a *Miranda* warning does not preclude the use of voluntary statements.

---

[3] The Court notes that Judge Poplin also correctly pointed out that providing consent to a search is a non-testimonial act that does not implicate a Defendant's Fifth Amendment Rights [Doc. 384, p. 56 n. 9].

15

In addressing the issue of voluntary statements, Judge Poplin noted that:

> "Volunteered statements of any kind are not barred by the Fifth Amendment." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (quoting *Miranda v. Arizona*, 384 U.S. 436, 478 (1966)). Instead, "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent[,]" which is "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 300–01 (internal footnotes omitted). "Interrogation" refers to express questioning or words or actions on the part of the police that they know are reasonably likely to elicit an incriminating response. *McKinney v. Hoffner*, 830 F.3d 363, 370–71 (6th Cir. 2016) (quoting *Innis*, 446 U.S. at 301). Therefore, "spontaneous and unprovoked" statements are admissible. *United States v. Cole*, 315 F.3d 633, 637 (6th Cir. 2003).

[Doc. 384, p. 57]. Defendant cites no case law in support of his objection on this issue.

In this case, Judge Poplin sets forth a timeline of some of the post-handcuffing interactions between defendant and law enforcement [*Id.* at pp. 57-58]. The timeline identifies specific statements made by defendant which Judge Poplin ruled were voluntary and which would be admissible at trial. Specifically, the R&R states:

> Then, at approximately 21:30:58, while Trooper Fletcher was preparing to transport [d]efendant Forbes and [c]odefendant Gilmore to the Roane County Jail, and [d]efendant Forbes was placed in the back seat of the patrol vehicle, [d]efendant Forbes asks "Did y'all count that money?" — to which Trooper Fletcher responds "No, we don't count it." Defendant Forbes then states, "That's fourteen, one thirty, to be exact." Trooper Fletcher explains that it is taken to the bank to get an official count, and sealed on camera, to which [d]efendant Forbes responds "I hope you gonna' open it on camera [be]cause I don't want nothing missing from that, sir."

[*Id.* at p. 58].

The Court has conducted an independent review of the relevant law and evidence and finds that Judge Poplin's ruling on this issue is correct. The statements in question

16

were made several minutes after law enforcement last questioned defendant, and, as Judge Poplin noted, the questioning immediately prior to the statements at issue was not the functional equivalent of interrogation because the questions were posed in order to have either defendant or codefendant Gilmore sign a release form for the money found in the vehicle [*Id*. at pp. 58-59]. Accordingly, defendant's fifth objection will be **OVERRULED**.

## IV. Conclusion

For the reasons discussed herein, and upon careful, *de novo* review of the record and the law, defendant's objections [Doc. 394] are **OVERRULED**. The Court **ACCEPTS IN WHOLE** the R&R [Doc. 384] and incorporates it into this Memorandum Opinion and Order. Accordingly, defendant's Motion to Suppress [Doc. 338] is **DENIED**.

IT IS SO ORDERED.

          s/ Thomas A. Varlan
          UNITED STATES DISTRICT JUDGE